UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRENITAZE MOORE #960770,

        Plaintiff,

v.

AMY WESTCOMB, et al.,

        Defendants.
_____/

Case No. 2:20-cv-00179

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Brenitaze Moore pursuant to 42 U.S.C. § 1983. Moore is confined in the Alger Correctional Facility. Moore originally filed suit against Warden Schroeder, Corrections Officer (CO) McGuire, CO Hannah, CO Trombley, and Registered Nurse (RN) Westcomb. Moore's complaint, which is dated September 21, 2020, alleged that he was exposed to tear gas when Defendants deployed the gas into a neighboring cell. Moore asserts that his exposure to tear gas and lack of medical care violated his Eighth and Fourteenth Amendment rights. (ECF No. 1.) On October 13, 2020, the Court issued a screening opinion and order that dismissed Warden Schroeder and allowed Moore's Eighth Amendment claims to proceed against McGuire, Hannah, Trombley and Westcomb. (ECF Nos. 3 and 4.)

On October 28, 2020, Moore filed an amended complaint in violation of Fed. R. Civ. P. 15. (ECF No. 13.) Moore failed to move for leave of Court before he filed his amended complaint. Moore's amended complaint lists dismissed-Defendant Warden Schroeder. On November 30, 2020, Moore filed a "Memorandum in Support of Complaint." (ECF No. 25.)

This Report and Recommendation addresses the following motions:

- RN Westcomb's motion for summary judgment based on Moore's failure to exhaust his administrative remedies (ECF No. 15);

- Moore's motion for a preliminary injunction (ECF No. 21);

- Hannah and Trombley's motion for summary judgment based on Moore's failure to exhaust his administrative remedies[1] (ECF No. 29); and

- Moore's motion for summary judgment (ECF No. 35).

These motions are fully briefed.[2] Defendants argue that Moore failed to exhaust his administrative remedies before he filed his complaint. The records in

---

[1] It is unclear why CO McGuire did not join in this motion. There could be an issue regarding whether Moore properly served McGuire with a summons and complaint. (ECF No. 19.)

[2] Moore has filed two unauthorized sur-replies. (ECF Nos. 31, 36.) "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted). The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply. *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010). Moore did not file a motion for leave to file a sur-reply in this case. Accordingly, it is recommended that the Court strike Moore's sur-replies.

this case indicate that Moore started the grievance process before he filed his original complaint, but then filed his complaint before the grievance process was complete. In addition, Moore did not name RN Westcomb in his grievances.

Moore argues that he exhausted his administrative grievances before he filed his amended complaint. Moore says that his grievances were timely because his amended complaint reset the clock on when he was required to exhaust his claims. The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motions for summary judgment.

Although CO McGuire did not move for summary judgment based on a failure to exhaust, Moore's claim against McGuire suffers from the same problems as his claims against Hannah and Trombley. Accordingly, the undersigned recommends dismissal of the claim against McGuire as well.

The undersigned also recommends that the Court deny Moore's motions (ECF Nos. 19, 35) because they lack merit and will be moot if the Court adopts the undersigned's recommendations on the exhaustion issues.

If the Court adopts these recommendations, the case will be dismissed.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[3] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

4

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The

issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the

grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th

> Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

### IV. Plaintiff's Allegations

Plaintiff's two remaining Eighth Amendment claims are summarized in the table below.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Violation of Plaintiff's rights under the Eighth Amendment: Plaintiff claims that he could have died due to exposure to toxic gas fumes sprayed into neighboring cell. Defendants were informed but did nothing. | COs McGuire, Hannah, and Trombley | July 12, 2020 |
| 2 | Violation of Plaintiff's rights under the Eighth Amendment: Plaintiff claims that submitted | RN Westcomb | July 2020 |

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| | multiple requests (kites) for medical care but did not receive a response. | | |

### V.  Whether Moore exhausted his claims against Defendants

Moore asserts that he exhausted his claims in **grievance LMF-20-207-0893-03D**.  Moore admits that he received his Step III response *after* he had already filed this action.  (ECF No. 22, PageID.166.)  Nevertheless, Moore argues that he fixed this error by filing his amended complaint after he received his Step III response.

Moore's Step I grievance, which is dated July 14, 2020, is shown, in part, below.

> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Brenitaze, Moore | 960770 | LMF | A-217 | 7/12/2020 | 7/14/2020 |
>
> **What attempt did you make to resolve this issue prior to writing this grievance? On what date?** 7-12-2020
> **If none, explain why.** I notified the officers (McGuire, Hannah, Trombley and a few others) about Tear Gas entering through the vents and asked for help But they refused to help me.
>
> **State problem clearly.** Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On Saturday, 07, 12, 202 at around 9pm the Aspen unit officers had Tear Gas Bombed an in-mate without first turning off the ventilation system and it caused Tear Gas to enter and circulate throughout my cell through the air vents. After breathing in the gas fumes I started choking, vomiting, coughing, crying, and having chest pains, soar throat and head aches. I notified every officer about the matter who made count rounds on my wing, But I was denied all requests for help and was forced to stay in the same cell and breathe in toxic fumes for 18 hours until I was finally given cleaning supplies to clean the Tear Gas residue from my cell. This placed me in an inhumane and harmful environment, violating P.D. 03.03.130 and my Federal Constitutional rights under the 5th, 6th, 8th and 14th Amendments, rights. B. Moore
> I was treated like this without cause.                                  *Grievant's Signature*
>
> **RESPONSE (Grievant Interviewed?)** ☒ Yes ☐ No  If No, give explanation. If resolved, explain resolution.)
> Interviewed Prisoner Moore and addressed his concerns regarding staff mistreatment and abuse. Contacted Officer Popour who was assigned to Aspen Unit on the day the alleged incident took place. Officer Popour informed me the purge was activated after the move team had used chemical agent in the unit to clear the chemical agent from the unit wings. There is no evidence of a violation of departmental policies or procedures. Grievance denied at Step I.

(ECF No. 22-1, PageID.175.)

First, a review of this grievance demonstrates that Moore did not mention RN Westcomb and did not assert that he was denied medical care and treatment. The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other

employee"). Where a prisoner fails to name a defendant in his Step I grievance, the claim against that individual is not properly exhausted. *Id.* at *6. Thus, Moore's claims against RN Westcomb should be dismissed.

Second, Moore filed his complaint in this matter before he allowed the grievance process to finish. Moore's original complaint is dated September 21, 2020 and was filed on September 23, 2020. (ECF No. 1.) The Step III grievance response was mailed to Moore on October 23, 2020. (ECF No. 22-1, PageID.178.) The conduct that Moore attributes to Defendants in his amended complaint arose in July of 2020. Moore's amended complaint relates back to the date of his original complaint. Fed. R. Civ. P. 15(c)(1)(B). The amendment relates back to the date of the original pleading when the amended claims "arose out of the conduct, transaction, or occurrence set out" in the original pleading. *Id.*

Moore attempts to address his problem with the exhaustion requirement by arguing that his claims were exhausted completely before he filed his amended complaint. As the Sixth Circuit has stated: "we hold that the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, **provided that plaintiff's original complaint contained at least one fully exhausted claim**." *Mattox*, 851 F.3d at 595 (emphasis added). Here, Moore failed to properly exhaust any of the claims in his original complaint before filing the original complaint. Therefore, he cannot simply overcome the exhaustion requirement by filing an amended complaint after completing the grievance process.

12

A review of the timeline for Moore's grievance and complaint confirms the problem. Moore filed his Step I grievance naming Defendants McGuire, Hannah, and Trombley. Moore's Step I grievance was submitted on July 14, 2020. (ECF No. 22-1, PageID.175.) The Step I response was dated July 29, 2020. (*Id.*) Moore's Step II appeal was received on August 12, 2020. (ECF No. 22-1, PageID.176.) The Step II response is dated August 19, 2020. (ECF No. 22-1, PageID.177.) The Step III grievance was received on August 27, 2020. (ECF No. 22-1, PageID.178.) Instead of waiting for the Step III response, Moore filed this lawsuit in September 2020, before the grievance process was complete. The Step III response was mailed to Moore on October 23, 2020, well after this case had already begun. (ECF No. 22-1, PageID.178.)

Title 42, United States Code, Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Moore did not satisfy this requirement with his original complaint. He essentially jumped the starter's gun. He attempts to end-run the exhaustion requirement by filing an amended complaint after he completed the grievance process. The exhaustion requirement helps achieve several goals.

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . In other instances, the internal review might "filter out some frivolous claims." . . . . And for cases

13

> ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter*, 534 U.S. at 524–25 (internal citations omitted).

Moore did not allow MDOC officials to finish their review of his complaints before filing his lawsuit. And his remedy – filing an amended complaint after the completion of the grievance process – simply treats the grievance process as an administrative hurdle to be cleared prior to the initiation of a federal lawsuit. The undersigned is unwilling to adopt Moore's approach to the exhaustion requirement.

When Moore filed his original complaint in September of 2020, the grievance process was still ongoing. Moore had not exhausted any of his claims. Moore's amended complaint, which is based upon the same transaction asserted in his original complaint, relates back to the date of his original complaint. Moore's amendment – which failed to assert any specific new claim – does not relieve Moore of his obligation to exhaust prior to filing his lawsuit because Moore failed to exhaust any claim prior to the filing of his original complaint on September 21, 2020. *Mattox*, 851 F.3d at 595.[5]

Moore asserts that his original complaint was against Defendants Hannah and Trombley in their official capacities. (ECF No. 33, PageID.278-79.) Moore argues that his amended complaint names these Defendants in their individual capacities.

---

[5] Similarly, Moore's amended complaint should not be read to revive his dismissed Eighth and Fourteenth Amendment claims against Defendant Schroeder. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.")

(*Id.*)  Moore argues that his amended complaint is an entirely new and different complaint, filed after he exhausted his administrative remedies.  (*Id.*)  Although, Moore is correct that a properly filed amended complaint replaces a prior complaint, the amended complaint relates back to the filing date of the original complaint.  Fed. R. Civ. P. 15(c).  Moore's assertion that he can restart the exhaustion clock simply by filing a new complaint is without merit.

### VI. Moore's motion for summary judgment

Moore filed a motion for summary judgment arguing that there exists no dispute that his Constitutional rights were violated.  Moore argues that he is entitled to judgment.  (ECF No.35.)  However, Moore has not presented any factual support that could establish that there exists a lack of a genuine issue of fact that his Eighth Amendment rights were violated.  At best, there exists a genuine issue of fact that his Eighth Amendment rights were infringed, and Moore is not entitled to summary judgment in his favor.

### VII. Motion for preliminary injunction

In his motion, Moore alleges that he is constantly being retaliated against due to the filing of this action and requests an order from this Court.  (ECF No. 21.) Moore says that Captain Kienitz threatened to withhold meals and to have a move team come and gas his cell unless he stops filing grievances and lawsuits.  Moore also says that Officer Oslund told Moore that Kienitz ordered him not to provide Moore any food.  When Moore threatened to file a retaliation action, Oslund told him he would issue him a misconduct ticket to justify denying Moore a food tray.

Moore asserts that he spoke to Counselor Hubble about his legal documents, and Hubble told him he was not going to "handle any of your snitch ass legal papers to file lawsuits on my co-workers." (*Id.*, PageID.162.) In addition, Moore asserts that "other officers" have refused to give him grievance forms. Moore requests a transfer to a different facility and a restraining order against non-defendants Oslund, Kienitz, and Hubble, and everyone else who works at the Alger Correctional Facility.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See*

*Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Moore has not made such a showing. It is not at all clear from Moore's *pro se* complaint or subsequent filings that Moore has a substantial likelihood of success on his Eighth Amendment claims.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Moore requests a transfer to a new prison and a restraining order against three non-defendants who work at the Alger Correctional Facility. Moore has presented no evidence that Defendants have engaged in any of the activities from which he seeks a restraining order. Moore allegations of on-going abuse are largely conclusory.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal

17

courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, it is respectfully recommended that the Court deny Moore's motion for preliminary relief.

## VIII. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment (ECF Nos. 15 and 29) based on Moore's failure to properly exhaust his administrative remedies.

Although CO McGuire did not move for summary judgment based on a failure to exhaust, Moore's claim against McGuire suffers from the same problems as his claims against Hannah and Trombley. Accordingly, the undersigned recommends dismissal of the claim against McGuire as well.

The undersigned also recommends that the Court deny Moore's motions (ECF Nos. 19, 35) because they lack merit and will be moot if the Court adopts the undersigned's recommendations on the exhaustion issues.

If the Court adopts this recommendation, the case will be dismissed.


Dated:  April 8, 2021                                      /s/ *Maarten Vermaat*
                                                          MAARTEN VERMAAT
                                                          U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).